FILED IN CLERK'S OFFICE
U.S.D.C. - Atlanta

IN THE UNITED STATES DISTRICT COURT      JUN 2 9 2011

FOR THE NORTHERN DISTRICT OF GEORGIA

JAMES N. HATTEN, Clerk
By: _____
Deputy Clerk

ROME DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CRIMINAL INDICTMENT |
| v. | : | NO. 4:11CR-22 RLV |
| JASON VOTROBEK; | : | |
| JESSE VIOLANTE; | : | |
| ROLAND CASTELLANOS; | : | |
| TARA ATKINS; and | : | |
| DR. JAMES CHAPMAN. | : | |

THE GRAND JURY CHARGES THAT:

## INTRODUCTION

At all times relevant to this Indictment:

1.    The Controlled Substances Act governed the manufacture, distribution, and dispensing of controlled substances in the United States.  The Controlled Substances Act defined a "controlled substance" as a drug or other substance that was included within one of five "schedules" – Schedule I, II, III, IV, or V – of Subchapter I, Part B of the Act.  21 U.S.C. § 802(6).

2.    Various prescription drugs were defined as controlled substances under the Act.  Drugs were placed into these schedules based on their potential for abuse, among other things.  Schedule II drugs have a high potential for abuse that can lead to severe psychological or physical dependence.  21 U.S.C. §§ 812(b)(2), (3), and (4).

3.      Title 21, United States Code, Section 822(b), and Title 21, Code of

Federal Regulations, Section 290.1, provided that controlled substances listed in

Schedule II could be dispensed or distributed only by prescription by a licensed

practitioner. The Drug Enforcement Administration, as authorized by the Act, issued

registration numbers to qualifying doctors and pharmacists that allowed them to

dispense or distribute Schedule II controlled substances. Accordingly, the controlled

substances could be dispensed only pursuant to a valid prescription from a physician

authorized by the DEA to distribute controlled substances.

4.      Title 21, Code of Federal Regulations, Section 1306.04, provided that

in order for a prescription for a controlled substance to be valid, it "must be issued for

a legitimate medical purpose by an individual practitioner acting in the usual course

of his professional practice." This section further provided that:

> The responsibility for the proper prescribing
> and dispensing of controlled substances is
> upon the prescribing practitioner.... An order
> purporting to be a prescription issued not in
> the usual course of professional treatment or
> in legitimate and authorized research is not a
> prescription within the meaning and intent of
> section 309 of the Act (21 U.S.C. 829) and
> the person knowingly filling such a purported
> prescription, as well as the person issuing it,
> shall be subject to the penalties provided for
> violations of the provisions of law relating to
> controlled substances.

2

5.    An order purporting to be a prescription that was issued outside the usual course of professional treatment or in legitimate and authorized research was not a prescription within the meaning of the Controlled Substances Act, and the person who issued the prescription violated Section 841(a)(1).

6.    Oxycodone, an opiate, was a Schedule II controlled substance. 21 C.F.R. § 1308.12(b)(1).   Percocet, Percodan, and Oxycontin were brand names of prescription drugs that contained oxycodone, and therefore were classified as Schedule II controlled substances.

7.    DR. JAMES CHAPMAN worked for Atlanta Medical Group (AMG), or "the clinic," and was registered with the Drug Enforcement Administration under the provisions of the Controlled Substances Act as a Practitioner, and was assigned a DEA registration number that authorized him to write prescriptions for Schedule II controlled substances.

8.    JASON VOTROBEK was the principal owner of AMG and was directly involved in its operations. JESSE VIOLANTE had an unspecified ownership interest in AMG and participated in its operations.  ROLAND CASTELLANOS was the Facility Director, in which capacity he oversaw the clinic's day-to-day operations. TARA ATKINS was AMG's Office Manager and was involved in all aspects of the clinic's operations, including patient in-take, dispensing pills, and monitoring the

3

doctors' work activities.   JASON VOTROBEK, JESSE VIOLANTE, ROLAND

CASTELLANOS, and TARA ATKINS are not medical doctors authorized to practice

medicine.

9.     AMG operated on a cash-only basis and did not accept insurance from

patients.  Further, it dispensed on-site Oxycodone, which was exchanged for cash.

Oxycodone pills were sold at substantially marked-up prices.

## COUNT ONE: DRUG CONSPIRACY

10.     Paragraphs One through Nine of the Indictment are realleged and

incorporated into Count One of this Indictment.

11.     Beginning in or about May 2010 and continuing until on or about May

24, 2011, within the Northern District of Georgia, the defendants, JASON

VOTROBEK, JESSE VIOLANTE, ROLAND CASTELLANOS, TARA ATKINS,

and DR. JAMES CHAPMAN, did knowingly combine, conspire, confederate, agree

and have a tacit understanding with others known and unknown to the Grand Jury to

violate Title 21, United States Code, Section 841(a)(1), that is, to knowingly and

intentionally distribute and dispense controlled substances in violation of Title 21,

United States Code, Sections 846 and 841(b)(1)(C).   Said conspiracy involved

Oxycodone, a prescription drug designated as a Schedule II controlled substance,

which was distributed and dispensed for other than a legitimate medical purpose and

4

not in the usual course of professional practice.

## Ways, Manners and Means of the Conspiracy

12.    The purpose of the conspiracy was to sell as many Oxycodone pills as possible, irrespective of legitimate medical purpose for prescribing them, to generate windfall profits.  To accomplish this purpose, DR. JAMES CHAPMAN, with the knowing involvement and participation of JASON VOTROBEK, JESSE VIOLANTE, ROLAND CASTELLANOS, and TARA ATKINS, would distribute and dispense Oxycodone for other than a legitimate medical purpose and not in the usual course of professional practice, thus causing, aiding, abetting, and facilitating the misuse, abuse, and further distribution of the controlled substance.  AMG, under the governance and at the direction of JASON VOTROBEK, JESSE VIOLANTE, ROLAND CASTELLANOS, and TARA ATKINS, would then dispense the prescribed pills on-site for a price that generated a high profit margin.

13.    It was part of the conspiracy that DR. JAMES CHAPMAN would prescribe Oxycodone at a patient's first appointment without conducting a neurological and physical examination that was appropriate to the patient's complaint, and thus did not result in a legitimate diagnosis justifying the prescriptions of the controlled substances.  Further, DR. JAMES CHAPMAN would prescribe Oxycodone in amounts and dosage combinations that exceeded that required for

legitimate medical treatment. At later follow-up visits, DR. JAMES CHAPMAN would write additional prescriptions without further medical evaluations, or with limited medical evaluation, that was required to continue writing prescriptions at the dosages indicated on the prescriptions.

14.    DR. JAMES CHAPMAN continued prescribing controlled substances after ignoring obvious indications that people were abusing, misusing, and distributing the prescribed drugs. The clinic serviced an extreme number of patients, most visiting from out-of-state. Many patients, in turn, distributed pill distributed by AMG.

15.    It was further part of the conspiracy that JASON VOTROBEK, JESSE VIOLANTE, ROLAND CASTELLANOS, and TARA ATKINS, together, monitored and directed DR. JAMES CHAPMAN with respect to the number of patients that he examined. On at least one occasion when DR. JAMES CHAPMAN was unable to do so himself, TARA ATKINS, with the knowledge and participation of ROLAND CASTELLANOS, took steps to facilitate the prescribing of Oxycodone to patients, even though she was not a doctor.

16.    It was further part of the conspiracy that JASON VOTROBEK, JESSE VIOLANTE, ROLAND CASTELLANOS, and TARA ATKINS, together, monitored law enforcement actions directed at facilities like AMG, that were illegally

6

prescribing and dispensing controlled narcotics, to develop practices and procedures to avoid AMG's being detected and targeted by law enforcement.   When it was determined, for example, that operating as a cash-only business might be a factor in being targeted by law enforcement, JASON VOTROBEK, JESSE VIOLANTE, ROLAND CASTELLANOS, and TARA ATKINS, together, began to take steps to transition into accepting insurance from patients.

17.   Patients at AMG falsified drug screens, including bringing to the clinic condoms containing urine. Non-medical personnel assisted with standard medical practices, including taking patients' blood pressure. Patients paid for staff members' lunches and, at times, directly bribed AMG for access to the clinic. Many patients had visible signs of being drug addicts. JASON VOTROBEK, JESSE VIOLANTE, ROLAND CASTELLANOS, TARA ATKINS, and DR. JAMES CHAPMAN knowingly sanctioned these business practices.

## MONEY LAUNDERING CHARGES

## COUNT TWO: MONEY LAUNDERING CONSPIRACY

18.   Paragraphs One through Nine are realleged and incorporated into Counts Two through Eight of this Indictment.

19.     Beginning on a date unknown to the Grand Jury, but at least by May

2010, and continuing up to and including May 24, 2011, in the Northern District of

Georgia, and elsewhere,  defendants JASON VOTROBEK, JESSE VIOLANTE,

ROLAND CASTELLANOS, AND TARA ATKINS, together with others known and

unknown to the Grand Jury, did unlawfully, willfully, and knowingly combine,

conspire, confederate, agree and have a tacit understanding with each other and other

persons known and unknown to the Grand Jury, to commit violations of the law of

the United States of America under Title 18, United States Code, Section 1956, as

follows:

> (a)     To conduct and attempt to conduct financial transactions affecting
>
> interstate and foreign commerce, which transactions involved the
>
> proceeds of specified unlawful activity, that is, the felonious
>
> selling and dealing in controlled substances, and knowing that the
>
> property involved in such financial transactions represented the
>
> proceeds of some form of unlawful activity, with the intent to
>
> promote the carrying on of such specified unlawful activity, in
>
> violation of Title 18, United States Code, Section 1956(a)(1).

## OVERVIEW OF SCHEME

20.     The defendants devised and engaged in a scheme to acquire monies from

the sale of Oxycodone and to purchase additional Oxycodone. The purpose of said scheme was to promote the continued operation of defendants' drug dealing business.

### Ways, Manners and Means of the Conspiracy

21. It was part of the conspiracy that:

    a. The defendants and their co-conspirators did collect proceeds from the sale of illegal controlled substances, including primarily Oxycodone;

    b. The proceeds collected were significant;

    c. The defendants and their co-conspirators would and did purchase and sell large quantities of Oxycodone in the Northern District of Georgia, thus generating the aforementioned proceeds; and

    d. The defendants and their co-conspirators would and did use these proceeds to purchase additional quantities of Oxycodone which, in turn, were sold, thereby generating additional proceeds;

All in violation of Title 18, United States Code, Section 1956(h).

### COUNT THREE

22. On or about May 25, 2011, in the Northern District of Georgia, defendants, JASON VOTROBEK, JESSE VIOLANTE, ROLAND CASTELLANOS, and TARA ATKINS, aided and abetted by each other, knowingly conducted and

attempted to conduct a financial transaction in and affecting interstate commerce, that is, the deposit into a SunTrust bank account maintained by JJR Pharmacy of a $65,000 (U.S.) check issued by Votrobek Investments , which involved the proceeds of a specified unlawful activity, namely the distribution and dispensing of controlled substances in violation of Title 21, United States Code Sections 841 and 846, knowing that the transaction was designed in whole and in part to promote such unlawful activity, and that while conducting and attempting to conduct such financial transaction knew that the funds involved in the financial transaction represented the proceeds of some form of unlawful activity in violation of Title 18, United States Code, Sections 1956(a)(1)(A)(i) and 2.

## COUNT FOUR

23.    On or about July 12, 2010, in the Northern District of Georgia, defendants, JASON VOTROBEK, JESSE VIOLANTE, and ROLAND CASTELLANOS, aided and abetted by each other, knowingly conducted and attempted to conduct a financial transaction in and affecting interstate commerce, that is, the transfer of a $34,028 (U.S.) check from Atlanta Medical Group to Dispensing Solutions, Inc., which involved the proceeds of a specified unlawful activity, namely the distribution and dispensing of controlled substances in violation of Title 21, United States Code Sections 841 and 846, knowing that the transaction was designed

in whole and in part to promote such unlawful activity, and that while conducting and attempting to conduct such financial transaction knew that the funds involved in the financial transaction represented the proceeds of some form of unlawful activity in violation of Title 18, United States Code, Sections 1956(a)(1)(A)(i) and 2.

## COUNT FIVE

24. On or about January 7, 2011, in the Northern District of Georgia, the defendants, JASON VOTROBEK and JESSE VIOLANTE, aided and abetted by each other, knowingly conducted and attempted to conduct a financial transaction in and affecting interstate commerce, that is, the transfer of a $75,000 (U.S.) check from Votrobek Investments to JV Industries and Motorsports, which involved the proceeds of a specified unlawful activity, knowing that the transaction was designed in whole and in part to conceal and disguise the nature, location, source, ownership, and control of the proceeds of said specified unlawful activity and that while conducting and attempting to conduct such financial transaction knew that the funds involved in the financial transaction represented the proceeds of some form of unlawful activity in violation of Title 18, United States Code, Sections 1956(a)(1)(B)(i) and 2.

## COUNT SIX

25. On a date between October 2010 and March 2011, in the Northern District of Georgia, the defendant, ROLAND CASTELLANOS, knowingly conducted and attempted to conduct a financial transaction in and affecting interstate commerce, that

is, the deposit of $20,000 (U.S.) into a SunTrust bank account maintained by Crownroland Corporation, which involved the proceeds of a specified unlawful activity, knowing that the transaction was designed in whole and in part to conceal and disguise the nature, location, source, ownership, and control of the proceeds of said specified unlawful activity and that while conducting and attempting to conduct such financial transaction knew that the funds involved in the financial transaction represented the proceeds of some form of unlawful activity in violation of Title 18, United States Code, Sections 1956(a)(1)(B)(i) and 2.

## COUNT SEVEN

26.  On or about August 13, 2010, in the Northern District of Georgia, defendants, JASON VOTROBEK, and JESSE VIOLANTE, aided and abetted by each other, did knowingly engage and attempt to engage in a monetary transaction affecting interstate and foreign commerce in criminally derived property that was of a value greater than $10,000 to wit: the purchase of a 2010 GMC Yukon from Carl Black Automotive Group located in Kennesaw, Georgia, in exchange for $46,694.88 in funds and monetary instruments, said funds and monetary instruments having been derived from a specified unlawful activity, that is, the felonious selling and dealing in a controlled substance. All in violation of Title 18, United States Code, Section 1957.

## COUNT EIGHT

27.    On or about August 21, 2010, in the Northern District of Georgia,

defendant, ROLAND CASTELLANOS, did knowingly engage and attempt to engage

in a monetary transaction affecting interstate and foreign commerce in criminally

derived property that was of a value greater than $10,000 to wit: the purchase of a

2007 Infiniti from Carmax located in Kennesaw, Georgia, in exchange for $31,544.88

in U.S. funds, said funds having been derived from a specified unlawful activity, that

is, the felonious selling and dealing in a controlled substance. All in violation of Title

18, United States Code, Section 1957.

## FORFEITURE PROVISION

1.    Upon conviction of the controlled substance offense alleged in Count

One of this Indictment, the defendants shall forfeit to the United States, pursuant to

Title 21, United States Code, Section 853, all property constituting, or derived from,

proceeds obtained, directly or indirectly, as a result of the said violations and all

property used or intended to be used, in any manner or part, to commit, or to facilitate

the commission of the said violations, including but not limited to the following:

   a.    MONEY JUDGMENT: A sum of money in United States currency equal

       to the total amount of money involved in each offense, or conspiracy to

       commit such offense, for which the defendant is convicted.  If more

       than one defendant is convicted of an offense, the defendants so

convicted are jointly and severally liable for the amount involved in such offense;

b.     BANK ACCOUNTS: All United States currency funds or other monetary instruments, including interest, credited to the following accounts:

| ACCOUNT HOLDER | BANK | ACCOUNT NUMBER |
|---|---|---|
| Atlanta Medical Group Inc | SunTrust Bank | *********0975 |
| Crownroland Corporation | SunTrust Bank | *********1924 |
| Roland Castellanos or Daniel Sirgany | SunTrust Bank | *********1916 |
| Votrobek Investments | SunTrust Bank | *********9086 |
| Microbrewed Fertilizer LLC | SunTrust Bank | *********3484 |
| JJR Pharmacy Inc. | SunTrust Bank | *********0397 |
| Violante Investments & Leasing | Wells Fargo Bank | *********8867 |
| JV Industries & Motorsports LLC | Wells Fargo Bank | *********5786 |
| Jesse Violante | Wells Fargo Bank | *********8373 |
| Dr James Earl Chapman | Bank of America | ********6727 |

c.     CONVEYANCES

| MAKE | YEAR | MODEL | VIN |
|---|---|---|---|
| Infiniti | 2007 | FX35 | JNRAS08U77X101723 |
| GMC | 2010 | Yukon | 1GKMCCE31AR162542 |
| Acura | 2009 | TL | 19UUA86549A011902 |
| Ford | 2009 | F-250 | FTSW21R89EB05286 |
| Mercedes | 2007 | S550 | WDDNG71X87A141415 |
| Chevrolet | 2008 | Silverado | 1GCJK33638F124577 |

d.    CURRENCY

    i)    Approximately $305,146 in U.S. currency seized from 336 14th Avenue, Vero Beach, Florida, on or about June 7, 2011.

    ii)    Approximately $276,020 in U.S. currency seized from 10680 134th Court, Fellsmere, Florida, on or about June 7, 2011

e.    REAL PROPERTY: All those lots or parcels of land, together with its buildings, appurtenances, improvements, fixtures, attachments and easements, commonly known as:

    i)    336 14th Avenue, Vero Beach, Indian River County, Florida;

    ii)    8955 103rd Avenue, Vero Beach, Indian River County, Florida;

    iii)    1158 Oakcliff Road, Macon, Bibb County, Georgia.

2.    Pursuant to Title 18, United States Code, Section 982(a)(1), each defendant who is convicted of one or more of the money laundering offenses set forth in Counts Two through Eight of this Indictment shall forfeit to the United States all right, title, and interest in any and all property involved in each offense in violation of Title 18, United States Code, Sections 1956 and 1957, or conspiracy to commit such offense, for which the defendant is convicted, and all property traceable to such property, including the following: 1) all money or other property that was the subject of each transaction, transportation, transmission or transfer in violation of Sections

1956 and 1957; 2) all commissions, fees and other property constituting proceeds obtained as a result of those violations; and 3) all property used in any manner or part to commit or to facilitate the commission of those violations, including but not limited to the following:

    a.    MONEY JUDGMENT: A sum of money in United States currency equal to the total amount of money involved in each offense, or conspiracy to commit such offense, for which the defendant is convicted.  If more than one defendant is convicted of an offense, the defendants so convicted are jointly and severally liable for the amount involved in such offense;

    b.    BANK ACCOUNTS: All United States currency funds or other monetary instruments, including interest, credited to the following accounts:

| *ACCOUNT HOLDER* | *BANK* | *ACCOUNT NUMBER* |
|---|---|---|
| Atlanta Medical Group Inc | SunTrust Bank | *********0975 |
| Crownroland Corporation | SunTrust Bank | *********1924 |
| Roland Castellanos or Daniel Sirgany | SunTrust Bank | *********1916 |
| Votrobek Investments | SunTrust Bank | *********9086 |
| Microbrewed Fertilizer LLC | SunTrust Bank | *********3484 |
| JJR Pharmacy Inc. | SunTrust Bank | *********0397 |
| Violante Investments & Leasing | Wells Fargo Bank | *********8867 |
| JV Industries & Motorsports LLC | Wells Fargo Bank | *********5786 |
| Jesse Violante | Wells Fargo Bank | *********8373 |
| Dr James Earl Chapman | Bank of America | ********6727 |

c.    CONVEYANCES

| MAKE | YEAR | MODEL | VIN |
|------|------|-------|-----|
| Infiniti | 2007 | FX35 | JNRAS08U77X101723 |
| GMC | 2010 | Yukon | 1GKMCCE31AR162542 |
| Acura | 2009 | TL | 19UUA86549A011902 |
| Ford | 2009 | F-250 | FTSW21R89EB05286 |
| Mercedes | 2007 | S550 | WDDNG71X87A141415 |
| Chevrolet | 2008 | Silverado | 1GCJK33638F124577 |

d.    CURRENCY

i)      Approximately $305,146 in U.S. currency seized from 336 14th Avenue, Vero Beach, Florida, on or about June 7, 2011.

ii)     Approximately $276,020 in U.S. currency seized from 10680 134th Court, Fellsmere, Florida, on or about June 7, 2011

e.    REAL PROPERTY: All those lots or parcels of land, together with its buildings, appurtenances, improvements, fixtures, attachments and easements, commonly known as:

i)      336 14th Avenue, Vero Beach, Indian River County, Florida;

ii)     8955 103rd Avenue, Vero Beach, Indian River County, Florida;

iii)    1158 Oakcliff Road, Macon, Bibb County, Georgia.

3.    If, as a result of any act or omission of the defendants, any property subject to forfeiture:

a.   cannot be located upon the exercise of due diligence;

b.   has been transferred or sold to, or deposited with, a third person;

c.   has been placed beyond the jurisdiction of the Court;

d.   has been substantially diminished in value; or

e.   has been commingled with other property which cannot be subdivided without difficulty;

the United States intends, pursuant to Title 21, United States Code, Section 853(p),

as incorporated by Title 18, United States Code, Section 982(b)(1) and Title 28,

United States Code, Section 2461(c), to seek forfeiture of any other property of said

defendant up to the value of the forfeitable property described above.


A _____TRUE_____ BILL

_____Vernatha Hall_____
FOREPERSON


SALLY QUILLIAN YATES
UNITED STATES ATTORNEY


G. SCOTT HULSEY
ASSISTANT UNITED STATES ATTORNEY
600 U.S. Courthouse
75 Spring St., S.W.
Atlanta, GA  30303
404-581-6286
Georgia Bar No. 377480