IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ROME DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>v.<br><br>JASON VOTROBEK,<br>JESSE VIOLANTE,<br>ROLAND CASTELLANOS,<br>TARA ATKINS, and<br>DR. JAMES CHAPMAN,<br><br>Defendants. | CRIMINAL ACTION FILE<br>NO. 4:11-CR-022-RLV-WEJ |

**NON-FINAL REPORT AND RECOMMENDATION
ON DEFENDANTS' MOTION TO DISMISS INDICTMENT**

This matter is before the Court on a Motion to Dismiss [93] the Indictment filed by defendants Jason Votrobek, Jesse Violante, Roland Castellanos, and Tara Atkins. The remaining defendant, Dr. James Chapman, also seeks dismissal of the Indictment through a Motion to Adopt [94], which the Court granted [99]. For the reasons explained below, the undersigned **REPORTS** that the Indictment is sufficient under governing law, and thus **RECOMMENDS** that the Motion to Dismiss [93] be **DENIED**.

## I. THE INDICTMENT

On June 29, 2011, the grand jury return an eight-count Indictment [1] charging defendants with drug conspiracy and money laundering offenses (and seeking forfeiture of cash and property). The first six paragraphs of the Indictment provide relevant background, introducing the Controlled Substances Act ("CSA") and its Schedules (id. ¶ 1); outlining the classification of various prescription drugs as controlled substances based on their potential for abuse (id. ¶ 2); describing the requirement that Schedule II controlled substances be dispensed or distributed only by prescription from a licensed practitioner holding a registration number from the Drug Enforcement Administration ("DEA") allowing that activity (id. ¶ 3); stating that under Federal regulations, in order for a prescription for a controlled substance to be valid, it must be issued for a legitimate medical purpose by a practitioner acting in the usual course of his professional practice (id. ¶ 4); explaining that an order purporting to be a prescription issued outside the course of professional treatment or in legitimate and authorized research is not a prescription within the meaning of the CSA, and that the person who issued it violated 21 U.S.C. § 841(a)(1) (id. ¶ 5); and showing that oxycodone, an opiate, and Percocet, Percodan, and Oxycontin, brand names of prescription drugs that contain oxycodone, are Schedule II controlled substances (id. ¶ 6).

The next two paragraphs of the Indictment introduce the defendants. Dr. Chapman worked for the Atlanta Medical Group ("AMG" or the "clinic"), was registered with the DEA under the provisions of the CSA as a practitioner, and was assigned a DEA registration number that authorized him to write prescriptions for Schedule II controlled substances. (Indict. ¶ 7.) Defendant Votrobek was the principal owner of AMG and was directly involved in its operations. (Id. ¶ 8.) Defendant Violante had an unspecified ownership interest in AMG and participated in its operations. (Id.) Defendant Castellanos was the Facility Director, in which capacity he oversaw the clinic's day-to-day operations. (Id.) Defendant Atkins worked as AMG's Office Manager and was involved in all aspects of the clinic's operations, including patient in-take, dispensing pills, and monitoring the doctor's work activities. (Id.) Finally, the Indictment alleges that defendants Votrobek, Violante, Castellanos, and Atkins are not medical doctors authorized to practice medicine. (Id.)

The introductory section of the Indictment concludes with the assertion that AMG operated on a cash-only basis and did not accept insurance from patients. (Indict. ¶ 9.) Further, AMG allegedly sold and dispensed Oxycodone on site at substantially marked-up prices. (Id.)

Count One, labeled "Drug Conspiracy," begins at paragraph 10 and incorporates the preceding paragraphs. (See Indict. ¶ 10.) Given the centrality of the next paragraph, the Court quotes it in full below:

> Beginning in or about May 2010 and continuing until on or about May 24, 2011, within the Northern District of Georgia, the defendants, JASON VOTROBEK, JESSE VIOLANTE, ROLAND CASTELLANOS, TARA ATKINS, and DR. JAMES CHAPMAN, did knowingly combine, conspire, confederate, agree and have a tacit understanding with others known and unknown to the Grand Jury to violate Title 21, United States Code, Section 841(a)(1), that is, to knowingly and intentionally distribute and dispense controlled substances in violation of Title 21, United States Code, Sections 846 and 841(b)(1)(C). Said conspiracy involved Oxycodone, a prescription drug designated as a Schedule II controlled substance, which was distributed and dispensed for other than a legitimate medical purpose and not in the usual course of professional practice.

(Id. ¶ 11.)[1]

After a heading which states, "Ways, Manners and Means of the Conspiracy," the Indictment asserts that the "purpose of the conspiracy" was to sell as many Oxycodone pills as possible, irrespective of any legitimate medical purpose for

---

[1] Section 841(a)(1) makes it "unlawful for any person knowingly or intentionally–(1) to manufacture, distribute, or dispense, or possess with intent to manufacture, distribute, or dispense, a controlled substance." Section 846 provides as follows: "Any person who attempts or conspires to commit any offense defined in this subchapter shall be subject to the same penalties as those prescribed for the offense, the commission of which was the object of the attempt or conspiracy." Section 841(b)(1)(C) sets the penalties for violating § 841(a)(1) in the case of, inter alia, a Schedule II controlled substance.

4

prescribing them, to generate windfall profits. (Indict. ¶ 12.) To accomplish that purpose, the Indictment alleges that Dr. Chapman, with the knowing involvement and participation of Messrs. Votrobek, Violante, Castellanos, and Ms. Atkins, would distribute and dispense Oxycodone for other than a legitimate medical purpose and not in the usual course of professional practice, thus "causing, aiding, abetting, and facilitating the misuse, abuse, and further distribution of the controlled substance." (Id.) AMG, under the governance and at the direction of Messrs. Votrobek, Violante, Castellanos, and Ms. Atkins, would then "dispense the prescribed pills on site for a price that generated a high profit margin." (Id.)

The Indictment asserts that, as part of the conspiracy, Dr. Chapman would prescribe Oxycodone at a patient's first appointment "without conducting a neurological and physical examination that was appropriate to the patient's complaint," and thus made no legitimate diagnosis justifying that prescription. (Indict. ¶ 13.) Further, the Indictment alleges that Dr. Chapman would prescribe Oxycodone "in amounts and dosage combinations that exceeded that required for legitimate medical treatment." (Id.) At later follow-up visits, Dr. Chapman would write "additional prescriptions without further medical evaluations, or with limited medical evaluation," that was required to continue writing prescriptions at the dosages indicated on the prescriptions. (Id.)

The Indictment next alleges that Dr. Chapman continued prescribing controlled substances after ignoring "obvious indications that people were abusing, misusing, and distributing the prescribed drugs." (Indict. ¶ 14.) The clinic serviced an "extreme number of patients, most visiting from out-of-state." (Id.) Many patients, in turn, distributed pill distributed by AMG. (Id.)

The Indictment further alleges that it was part of the conspiracy that Messrs. Votrobek, Violante, Castellanos, and Ms. Atkins, "together, monitored and directed Dr. Chapman with respect to the number of patients that he examined." (Indict. ¶ 15.) According to the charging document, on at least one occasion when Dr. Chapman was unable to do so himself, Ms. Atkins, with the knowledge and participation of Mr. Castellanos, "took steps to facilitate" the prescribing of Oxycodone to patients, even though she was not a doctor. (Id.)

The Indictment alleges that, as part of the conspiracy, Messrs. Votrobek, Violante, Castellanos, and Ms. Atkins, together, monitored law enforcement actions directed at facilities like AMG, that were illegally prescribing and dispensing controlled narcotics, to develop practices and procedures to avoid AMG's being detected and targeted by law enforcement. (Indict. ¶ 16.) When it was determined, for example, that operating as a cash-only business might be a factor in being targeted by law enforcement, Messrs. Votrobek, Violante, Castellanos, and Ms. Atkins,

together, began to "take steps to transition into accepting insurance from patients." (Id.)

In the last paragraph of this section, the Indictment alleges that patients at AMG falsified drug screens, including bringing to the clinic condoms containing urine. (Indict. ¶ 17.) Non-medical personnel assisted with standard medical practices, including taking patients' blood pressure. (Id.) Patients paid for staff members' lunches and, at times, directly bribed AMG for access to the clinic. (Id.) Many patients had visible signs of being drug addicts. (Id.) According to the grand jury, Dr. Chapman, Messrs. Votrobek, Violante, Castellanos, and Ms. Atkins, knowingly sanctioned these business practices.[2]

## II. STANDARDS GOVERNING MOTION TO DISMISS INDICTMENT

"[I]t is axiomatic that an indictment is sufficient if it '(1) presents the essential elements of the charged offense, (2) notifies the accused of the charges to be defended against, and (3) enables the accused to rely upon a judgment under the indictment as

---

[2] Counts Two through Eight of the Indictment allege various money laundering offenses in violation of 18 U.S.C. §§ 1956 or 1957 against defendants Votrobek, Violante, Castellanos, and Atkins (Counts Two and Three); defendants Votrobek, Violante, and Castellanos (Count Four), defendants Votrobek and Violante (Counts Five and Seven), and defendant Castellanos (Counts Six and Eight). Defendants' Motion asserts, and the Government does not contest, that the money laundering offenses hinge on the outcome of the single foundational allegations set forth in Count One. (Defs.' Mot. 1-2.) Because the parties do not highlight the details of the money-laundering Counts, the Court does not as well.

7

a bar against double jeopardy for any subsequent prosecution for the same offense.'" United States v. Woodruff, 296 F.3d 1041, 1046 (11th Cir. 2002) (quoting United States v. Steele, 178 F.3d 1230, 1233 (11th Cir. 1999)); see also United States v. Fern, 155 F.3d 1318, 1325 (11th Cir. 1998) ("If an indictment specifically refers to the statute on which the charge was based, the reference to the statutory language adequately informs the defendant of the charge."). "'In judging the sufficiency of the indictment, the court must look to the allegations and, taking the allegations to be true, determine whether a criminal offense has been stated.'" United States v. Plummer, 221 F.3d 1298, 1302 (11th Cir. 2000) (quoting United States v. Fitapelli, 786 F.2d 1461, 1463 (11th Cir. 1986)). Morever, the sufficiency of the indictment is determined from its face. United States v. Sharpe, 438 F.3d 1257, 1263 (11th Cir. 2006). "In determining whether an indictment is sufficient, [it is] read . . . as a whole and give[n] . . . a 'common sense construction.'" United States v. Jordan, 582 F.3d 1239, 1245 (11th Cir. 2009) (quoting United States v. Gold, 743 F.2d 800, 813 (11th Cir. 1984)).

An indictment for conspiracy to commit an offense is not required to be as specific as a substantive count and is constitutionally asserted if it sets forth the essential elements of the offense, identifies co-conspirators, the object of the conspiracy, the conspiracy time frame, and the situs of the conspiracy. United States

v. Yonn, 702 F.2d 1341, 1348 (11th Cir. 1983); see also Steele, 178 F.3d at 1234 (not necessary to allege specific date and time where date and time are not essential element of the offense and allegation that defendant illegally dispensed four different controlled substances within a period of four months was sufficient); United States v. Ramos, 666 F.2d 469, 475 (11th Cir. 1982) ("an indictment for conspiracy to commit a criminal offense need not be as specific as a substantive count").

### III. CONTENTIONS OF THE PARTIES

Defendants contend that, although the Indictment charges that they knowingly conspired illegally to distribute Oxycodone, it fails to contain facts that, individually or collectively, make out a violation of 21 U.S.C. §§ 846 or 841, or which show that any of them performed any specific act that could reasonably be construed as criminal. Moreover, defendants Votrobek, Violante, Castellanos, and Atkins assert that paragraph 12 of the Indictment shows that their role in the alleged conspiracy was to enable their co-defendant, Dr. Chapman, to distribute and dispense Oxycodone for other than a legitimate medical purpose and not in the usual course of professional practice. Thus, they contend that the Indictment has actually charged them with conspiracy to aid and abet Dr. Chapman's violation of 21 U.S.C. §§ 846 and 841, but fails to allege a specific instance in which the physician dispensed or distributed Oxycodone in violation of the statute or even planned to do so. Citing United States

9

v. Superior Growers Supply Inc., 982 F.2d 173 (6th Cir. 1993), they argue that the Indictment fails to allege any crime that the defendants could know of or conspire to aid and abet, thus necessitating its dismissal.

The Government responds that Count One of the Indictment complies with governing Eleventh Circuit precedent. The Government further asserts that the Sixth Circuit case cited by defendants is inapposite. Finally, the Government argues that, to the extent defendants are claiming that they are not guilty of conspiring to distribute and dispense Oxycodone, or are otherwise challenging the sufficiency of the evidence, such challenge cannot be raised in a motion to dismiss an indictment.

## IV. DISCUSSION

The Court agrees with the Government that Count One states a valid conspiracy charge under governing Eleventh Circuit precedent. Indeed, Count One of the instant Indictment is almost identical to the count upheld in United States v. Bascaro, 742 F.2d 1335 (11th Cir. 1984). Although abrogated on other grounds, see United States v. Lewis, 492 F.3d 1219, 1222 (11th Cir. 2007), Bascaro's discussion of the sufficiency of that count of an indictment is good law and applicable here.

Specifically, Count V of the Indictment in Bascaro made the following allegations:

> Commencing during January, 1977 and continuing thereafter up to and including the date of the filing of this indictment, within the Northern District of Florida, and elsewhere, MANUEL ERIC VILLANUEVA, JOSE LUIS ACOSTA, MANUEL W. JAMES, GUSTAVO J. FERNANDEZ, CLIFFORD B. WENTWORTH, CARLTON C. REEVES, JAMES L. SELLERS, JOHN M. ARANEO, PATRICK C. WALDROP, RUSSELL HOBSON, and RENE BENITEZ, defendants herein, did unlawfully, willfully and knowingly conspire, combine, confederate and agree together, with each other and with divers other persons known and unknown to the Grand Jury, to distribute and to possess with intent to distribute, marihuana, a Schedule I controlled substance in violation of Title 21, United States Code, Section 841(a), all in violation of Title 21, United States Code, Section 846.

742 F.2d at 1348.

On appeal following their convictions, the defendants objected to Count V on the ground that, in the absence of more detailed factual allegations, it was constitutionally insufficient because it failed to put them on notice of the events giving rise to the crime charged. Bascaro, 742 F.2d at 1348. Along similar lines, they complained that they had previously been tried with respect to the incidents forming the basis for the charge, but that the indictment was so unspecific that they were unable to formulate a coherent objection on double jeopardy grounds. Id. The Eleventh Circuit responded that these "contentions need not detain us long." Id.

Relying on its earlier opinion in Yonn, 702 F.2d at 1341, the Bascaro court found that it had previously resolved this very issue adversely to defendants. Bascaro, 742 F.2d at 1348. Count V above, like the drug conspiracy count in Yonn, was

11

sufficient because it (1) recited the essential elements of the offense charged; (2) identified the alleged co-conspirators; (3) identified the particular controlled substance; (4) set forth the time span of the conspiracy; and (5) described where the criminal activity took place. Id. "'Taken as a whole, these allegations adequately set forth the offense charged.'" Bascaro, 742 F.2d at 1348 (quoting Yonn, 702 F.2d at 1348).

The same rationale applies here. Count One of the Indictment recites the essential elements of the offense charged. Specifically, paragraph 11 alleges that defendants knowingly combined, conspired, confederated, agreed, and had a tacit understanding with others to violate 21 U.S.C. § 841(a)(1) by knowingly and intentionally distributing and dispensing controlled substances in violation of 21 U.S.C. § 846.[3] That paragraph of the Indictment also identifies the alleged

---

[3] The essential elements of a conspiracy, defined in 21 U.S.C. § 846, to knowingly possess with intent to distribute a controlled substance in violation of 21 U.S.C. § 841(a)(1), are as follows:

(1) Two or more people in some way agreed to try to accomplish a shared and unlawful plan to possess . . . [substance];

(2) The Defendant knew the unlawful purpose of the plan and willfully joined in it; and

(3) the object of the unlawful plan was to [possess with intent to distribute] . . . .

12

co-conspirators; identifies the particular controlled substance (i.e., Oxycodone); sets forth the time span of the conspiracy (i.e., from about May 2010 until on or about May 24, 2011); and describes where the criminal activity took place (i.e., in the Northern District of Georgia). Given the Circuit's approval of virtually identical conspiracy counts in <u>Bascaro</u>, 742 F.2d at 1348, and <u>Yonn</u>, 702 F.2d at 1348, this Court must conclude that Count One of the instant Indictment is sufficient as well.

The Court further agrees with the Government that the Sixth Circuit case cited by defendants has no application here. In <u>Superior Growers</u>, the indictment charged conspiracy to aid and abet the manufacture of marijuana in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2. <u>Superior Growers</u>, 982 F.2d at 175. That indictment was found insufficient because it did not allege that the aiding and abetting actually furthered the manufacture of marijuana. <u>Id.</u> As the court stated, the problem was "how to logically combine the crime of conspiracy, which does not require proof of the underlying substantive offense, with an aiding and abetting offense, which doesn't exist without one." <u>Id.</u> at 178. Consequently, the court found that the indictment failed the "essential elements" requirement since the actual manufacture of marijuana is an essential element of the conspiracy to aid and abet the manufacture of marijuana. <u>Id.</u>

---

<u>See</u> Eleventh Circuit Pattern Jury Instructions (Criminal) Instruction 100 (2010).

Here, there is no such confusion. The defendants are charged with conspiracy to distribute and dispense Oxycodone, in violation of 21 U.S.C. §§ 846 and 841(b)(1)(C), not with a conspiracy to aid and abet the distribution of Oxycodone. Moreover, the Indictment's mention of "aiding [and] abetting" in paragraph 12 does not relate to the interaction between defendants Votrobek, Violante, Castellanos, and Atkins on the one hand and Dr. Chapman on the other. Instead, the Indictment alleges that the conspiracy among all defendants aided and abetted the patients' subsequent misuse, abuse, and further distribution of the controlled substance, but it does not charge defendants with aiding and abetting any subsequent crime.

## V. CONCLUSION

For the reasons stated above, the undersigned **RECOMMENDS** that Defendants' Motion to Dismiss [93] the Indictment be **DENIED**.

**SO RECOMMENDED,** this 8th day of May, 2012.

_Walter E. Johnson_
WALTER E. JOHNSON
UNITED STATES MAGISTRATE JUDGE