IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ROME DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,  ) | |
| v.                         ) | |
|                            ) | INDICTMENT NO. |
| JASON VOTROBEK,            ) | 4:11-CR-22-RLV |
| JESSEE VIOLANTE,           ) | |
| ROLAND CASTELLANOS,        ) | |
| TARA ATKINS,               ) | |
| DR. JAMES CHAPMAN, et al.  ) | |
|                            ) | |
|     Defendants.            ) | |

**DEFENDANT JASON VOTROBEK'S SENTENCING MEMORANDUM**

**COMES NOW** Defendant Jason Votrobek, by and through undersigned counsel, and hereby files this Sentencing Memorandum. In support, Defendant shows as follows:

**I.   Introduction**

As the Presentence Report ("PSR") clearly sets forth, and as the Court surely recalls, Defendant was convicted of all indicted charged counts after a 3 week trial. Defendant was remanded to custody after spending almost 3 years on pretrial release. The PSR summarizes the offense conduct and calculates an advisory Sentencing Guideline Range which places Defendant Votrobek at a 360-Life sentencing range. For the reasons set forth below, this court should not sentence Defendant to a

sentence suggested by a Sentencing Guidelines calculation. A non-Guideline sentence will be requested at the sentencing hearing for the following reasons, as well as other facts which may be articulated at the hearing.

**II.  The Drug Quantity/Relevant Conduct is inaccurate and overstates the seriousness of the offense.**

In this case, the PSR holds, at ¶¶ 21 and 60, that the relevant conduct from the offense involves every single Oxycodone pill which was calculated to be distributed to all 2500+ patients at AMG. This agglomeration includes quantities that are improperly counted as relevant conduct. Importantly, in every case, "[r]egardless of whether the district court imposes an above, below, or within-Guidelines sentence, it must place on the record an 'individualized assessment' based on the particular facts of the case before it." United States v. Carter, 564 F.3d 325, 330 (4th Cir. 2009) (quoting United States v. Gall, 552 U.S. 38, 50 (2007). The explanation must be sufficient to allow for "meaningful appellate review," such that the appellate court need "not guess at the district court's rationale." Carter at 329. In this case, to conclude that every Oxycodone prescription written and/or pill distributed from the in-house dispensary counts as relevant conduct is erroneous.

A. <u>Drugs prescribed by physicians not indicted must not be counted</u>.

For example, the pill quantity notably and erroneously include drugs distributed by Dr. Nortick and Dr. Daniachew who were not indicted alongside Defendant Votrobek. There was no evidence presented at trial that Defendant Votrobek ever had any dealings with either physician. Moreover, neither of these two physicians have been found to have engaged in any criminal conduct (as evidenced by their omission from the Indictment crafted by the Government) and the testimony from the patients equivocally established that these physicians independently exercised their medical judgment when treating AMG patients. Presumably then, the quantities of Oxycodone pills prescribed by Drs. Nortick and Daniachew must be deducted from the relevant conduct.

B. <u>The drug quantity is highly speculative.</u>

Although courts have approved reliance on direct or hearsay testimony of lay witnesses as to the quantities attributable to a defendant, they have cautioned that when the approximation is based only upon "uncertain" witness estimates, district courts should sentence at the low end of the range to which the witnesses testified. <u>United States v. Sampson</u>, 140 F.3d 585, 592 (4th Cir. 1998); *see also* U.S.S.G. §

6A1.3(a) (policy statement) (permitting sentencing courts to rely on "relevant information without regard to its admissibility under the rules of evidence applicable at trial, provided that the information has sufficient indicia of reliability to support its probable accuracy").

In this case, the lay witnesses who testified for the Government were patients of AMG, many who readily testified before the Court and the jury about the ailments from which they suffered, requiring them to seek medical treatment and pain medications. (Testimony of Diane Christianson, March 6, 2014; Sheila Shropshire, March 7, 2014; Linda Booth, March 12, 2014). It is inappropriate to presume that the full quantity prescribed to them is "contraband . . . within the scope of the criminal activity," without requiring the government to prove and without a factual finding by the District Court explicating the evidence supporting that finding. Additionally, to extrapolate that every other patient was prescribed medications for other than legitimate purposes, when these patients were not interviewed, nor were their medical records reviewed by the Government's expert, creates an unacceptably high risk that Defendant Votrobek will be punished for drug quantities a portion of which was lawfully obtained, possessed and consumed. United States v. Bell, 677 F.

3d 431 (4th Cir. 2011). [1] Based on the above, the drug quantity used overstates the seriousness of the offense.

### III. The Criteria of 18 U.S.C. § 3553(a) must be considered

Since the United States Supreme Court decided United States v. Booker, 543 U.S. 220, 125 S. Ct. 738, 160 L. Ed. 2d 621 (2005), a District Court is no longer required to sentence a defendant within the range provided by the Sentencing Guidelines, but is still obligated to correctly calculate that range. Post- Booker sentencing requires two steps. First, the District Court must consult the Guidelines and correctly calculate the range provided by the Guidelines. See United States v. Crawford, 407 F.3d 1174, 1178 (11th Cir. 2005). Second, the District Court must consider several factors to determine a reasonable sentence: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need to reflect the seriousness of the offense, to promote respect for the law, and

---

[1] There were in excess of 2500 patients who were treated at AMG, and the Government's expert, Dr. Parran, reviewed approximately 100 files. Thus, the relevant conduct is being based on evaluation .04% of the files, of which Dr. Parran was unable to arrive at an opinion on several of the files, undermining that percentage further.

to provide just punishment for the offense; (3) the kinds of sentences available; (4) the kinds of sentences and the sentencing range established; (5) any relevant or pertinent policy statement; (6) the need to avoid unwanted sentencing disparities; and (7) the need to provide restitution to victims. [2] See 18 U.S.C. § 3553(a); United States v. Talley, 431 F.3d 784, 786 (11th Cir. 2005) (per curiam).

### A.   18 U.S.C. § 3553(a)(1) - the nature and circumstances of the offense and the history and characteristics of the defendant

There is no better way to delve into the history and characteristics of the Defendant, than to hear from those people in the community who have known or encountered the Defendant during various intervals of his life. While the Presentence Report provides the factual details of Defendant Votrobek's criminal conduct, it does not describe his character or specific traits, and it certainly fails to address how Jason Votrobek may conduct himself once he concludes this chapter of his life. The letters, attached as Exhibits A-X, illustrate the character of a man known and valued by those in the community in which he lives and works. Jason Votrobek is described as a devoted and caring husband and father, a considerate and helpful neighbor, and a generous and caring friend and family member. The quality and depth of Defendant

---

[2]   As there is no identifiable victim or restitution in this case, this factor will not be discussed.

Votrobek's character as a loved family member and friend belies the criminal conviction which now taints his name. Defendant submits the attached letters and pictures, Exhibits A-X, for the Court's consideration. In the interest of judicial economy, the individuals who have submitted letters will not testify at the Sentencing Hearing.

**B. 18 U.S.C. § 3553(a)(2)-(4) - the need to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (3) the kinds of sentences available; (4) the kinds of sentences and the sentencing range established.**

The PSR calculates the advisory Guidelines range and arrives at a Combined Adjusted Offense Level of 42 (360-Life). There is but one type of sentence available to the Court: a sentence of imprisonment. Of course, the Court is vested with the discretion to determine what sentence of incarceration is just, to promote respect for the law and reflect the seriousness of the offense. Defendant submits that the range of sentences available to the Court include sentences which are substantially more than is needed to convey to Defendant Votrobek and the community the seriousness of the crimes committed. For a 30 year old man, even a sentence of 10 years conveys a strenuous message concerning respect for the law.

**C. 18 U.S.C. § 3553(a)(6)- the need to avoid unwanted sentencing disparities**

One of the factors the sentencing Court must consider is the "need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." 18 U.S.C. § 3553(a)(6).  Because the "avoidance of unwarranted [sentencing] disparities was clearly considered by the Sentencing Commission when setting the Guidelines ranges," a District court necessarily gives weight and consideration to the need to avoid unwarranted sentencing disparities when it correctly calculates and carefully reviews the Guidelines range.  See United States v. Docampo, 573 F.3d 1091, 1101 (11th Cir. 2009).  While the courts recognize the legitimacy of sentencing the cooperating defendant to a shorter sentence than a defendant who does not provide assistance to the government, there are boundaries of reasonableness in this rubric.  The co-defendants in this case received sentences of 24 months (Tara Atkins) and 52 months (Jesse Violante), respectively.  These sentences reward the testifying defendants for their assistance to the Government, but those sentences should also be a guidepost to the Court when considering an appropriate sentence for Jason Votrobek.  For example, should this Court consider a sentence of 120 months for Defendant Votrobek, it would still be punishing Defendant Votrobek by imposing a sentence greater than twice the length of the highest testifying co-defendant.

### III.   CONCLUSION

Based on the facts of the case, a sentence in the range of 120 months satisfies consideration of the Booker factors.   Looking at Defendant's past, and the devastating impact that his conduct has had on his family and personal life, there are ample grounds on which to predict that personal rehabilitation is underway.  (See Exhibits A-X).  Defendant has a profound understanding of the severity of his conduct and the ripple of effects therefrom.  Thus, a  sentence of substantially less than the advisory Guidelines recommendation is both reasonable and appropriate.

**WHEREFORE**, for all the foregoing reasons, Defendant respectfully requests that Exhibits A-X, Character letters and photographs on Defendant's behalf, be considered by this Court, and that the Court sentence Defendant to a sentence substantially less than the advisory Guidelines recommendation.

This 18th day of June, 2014.

Respectfully submitted,

*/s/ Colette Resnik Steel*
COLETTE RESNIK STEEL

*/s/ Brian Steel*
BRIAN STEEL

Counsel for Defendant Votrobek

The Steel Law Firm, P.C. 1800 Peachtree Street, N.W., Suite 300, Atlanta, Georgia 30309 (404) 605-0023

# CERTIFICATE OF SERVICE

This is to certify that I have this day served a copy of the within and foregoing

**SENTENCING MEMORANDUM** via electronic filing (e-filing), to the following:

**Scott Hulsey, Esq.
Cassandra Schansman
Laurel Boatright
Assistant United States Attorneys
600  Richard B. Russell Building
75 Spring Street, SW
Atlanta, Georgia  30303**

This 18th day of June, 2014.

                    Respectfully submitted,


                    */s/ Colette Resnik Steel*
                    COLETTE RESNIK STEEL